RALPH D. TUTTLE v. JUNIOR BUILDING CORPORATION.

(Filed 26 February, 1947.)

1. Corporations § 22—

G. S., 55-26.11, which requires the holders of ⅔ of its stock to approve the action of the directors of a corporation in selling the entire corporate property, does not apply to the sale of realty by a corporation having general power to buy and sell real estate, and the fact that such corporation is an incorporated fraternal association and contracts to sell its building designated as the fraternal order building does not bring the transaction within the statute when the building is not used for permanent office, home or other facility in carrying on its business.

2. Same—Nonsuit on ground that plaintiff's evidence disclosed that sale of realty by corporation had not been approved by majority of directors, held error.

In this action against a corporation for specific performance of an agreement to convey realty, plaintiff introduced evidence that he dealt directly with responsible officers of the corporation and that at a meeting, attended by less than a majority of the directors, he was informed that his offer had been accepted after a meeting, and the agreement was concluded. Plaintiff also introduced a copy of a letter from the corporation to the bank stating that the corporation enclosed deed for delivery when plaintiff should pay the balance of the purchase price. Held: Nonsuit on the ground that plaintiff's evidence disclosed that the sale of the property had not been authorized by a majority of the corporation's directors as required by statute, was error. G. S., 55-26.9; G. S., 55-26.10.

3. Same—

Evidence tending to show that a corporation had executed a deed for real estate and placed it in escrow raises a presumption that the deed, being under seal, was executed by authority.

APPEAL by plaintiff from *Warlick, J.,* at October Term, 1946, of STOKES.

The plaintiff brought this action to secure specific performance of a contract for the purchase and sale of a building and lot in the Town of Walnut Cove owned by the defendant but not occupied by it.

The defendant is a corporation under the laws of this State, the Certificate of Incorporation containing the following paragraphs relating to the purpose of its organization and its powers:

"Third: The objects for which this corporation is formed are as follows:

"To purchase that certain parcel of real estate now owned by Walnut Cove Council No. 211, Jr. O. U. A. M.; to own and to operate; to lease, to rent; to execute leases for considerations; to transfer; assign; sell and convey this real property; and/or to otherwise dispose of same.

"To purchase and/or otherwise acquire real and personal property; to own and operate; maintain; or dispose of the same by rent, lease or sale."

The following were respectively officers, directors and stockholders of the corporation:

"J. G. H. Mitchell was President and Director; W. N. Wheeler was Vice-President and Director; Dr. C. J. Helsabeck was Second Vice-President and Director; W. F. Marshall, Secretary and Director; J. D. Johnson, Treasurer and Director; J. J. Taylor, Director; R. J. Scott, Director; C. E. Davis, Stockholder; and J. L. Welch, stockholder; Dr. V. L. DeHart, stockholder."

Negotiations for the purchase and sale of the property having been instituted, the plaintiff made the following offer:

"October 22, 1945
Junior Order Building Corporation
Walnut Cove, N. C.

"Gentlemen:
　"I hereby make the following offer for the building and lot which you now own in Walnut Cove, N. C., on Main Street, which includes all the Old Mercantile Building and the Old P. O. Building.
　"I will give you $10,000 cash upon delivery of a good and sufficient deed. $500 check is herewith enclosed as part payment, leaving a balance of $9,500.
　"I am to receive possession of the property on November 1, 1945, and to receive all rents thereafter. I understand that you are to pay all taxes due including 1945.
　"I understand further that the Junior Order and the Masons are to have the use of the Hall same as they now have free for three years from July 1st, 1945.
　"I am to have 30 days from the date of acceptance of this offer in which to make the final payment.
　"I am to assume the payment of Commissions to J. A. Dillon on this contract.
　　　　　　　　　　　　　　　Yours very truly,
　　　　　　　　　　　　　　　RALPH D. TUTTLE,
　　　　　　　　　　　　　　　　　R. D. Tuttle."

W. F. Marshall, secretary for the defendant corporation, and Mr. Odell Jones came to see the plaintiff and told him that they had had

a meeting and agreed to sell him the building provided he would rent two rooms of it to somebody for a shirt factory or knitting mill office. To this the plaintiff assented and the rental price was agreed upon.

Plaintiff testified that the directors and some stockholders met that afternoon and discussed the preparing of the deed and fixing up the papers, again stating that they had accepted plaintiff's offer provided they could get together on the rental agreement, which they did.

At that meeting there were present, Marshall, J. D. Johnson, the treasurer, C. J. Helsabeck, V. L. DeHart, and Joe Welch. Marshall said they wanted it drawn up and got ready as quickly as possible since they wanted to dissolve the corporation.

Plaintiff told him that he would have the money ready any time he could get the deed, but in the contract he had 30 days in which to take it up. Plaintiff testified, "Mr. Marshall called me on Saturday afternoon and told me that Mr. R. J. Scott had prepared the deed and had it ready and I told him to mail it to the bank as per instructions and I got a letter from Mr. Marshall that afternoon or Sunday morning. A copy of the letter Mr. Marshall wrote the bank was sent to me." It is as follows:

"I am enclosing herewith a deed from the Junior Building Corporation, properly drawn and signed, to Mr. Ralph D. Tuttle deeding to him the property of the Junior Building Corporation. I am enclosing also herewith a contract from him to the town leasing unto the town the old postoffice building and the Red Cross room for a period of six months from November 1, 1945, for him to sign. Also there is enclosed a check from Tuttle Mor. Company to the Junior Building Corporation for $500; a part payment on the building. When he delivers to you a check for $9,500, I understand that it is in order for you to deliver him the deed.

"I have heard nothing further from the shirt factory but since we have until Monday or Tuesday of next week to hear from the parties, we are withholding writing a check from the Town to Mr. Tuttle for the rent as stipulated by the contract. We will give them more time to let us hear from them before we go into the contract with the Town.

"This is my understanding of the agreement and is in accordance with such instructions given to me by the stockholders of the Junior Building Corporation.

Yours very truly,
W. F. MARSHALL,
William F. Marshall."

Pursuant to the letter the plaintiff went over to the bank on Tuesday morning after the deed and asked Mr. Johnson for it and gave him the

balance of the money, $9,500.00. He was informed by Mr. Johnson that the deed had been withdrawn and was not there. Plaintiff was unable at that time to get any explanation.

The defendants offering no evidence, demurred to plaintiff's evidence and moved for judgment as of nonsuit. The motion was sustained and from the ensuing judgment plaintiff appealed.

*P. W. Glidewell, Sr., and A. C. Davis for plaintiff, appellant.*
*R. J. Scott and Fred Folger for defendant, appellee.*

SEAWELL, J. The defendant contends that the interchanges between the parties as above set out do not constitute a binding contract for the sale of the lands in question for that those who dealt with the plaintiff in the acceptance of his offer had no authority to make such contract, and that this want of authority appears so definitely in plaintiff's evidence as to support a judgment of nonsuit.

This want of authority, it is claimed, appears in this way: Inasmuch as the building and lot in controversy constituted the entire property of the corporation it could only be conveyed on approval by a two-thirds vote of its stockholders, which the record does not disclose to have been given, G. S., 55-26.11; and that in any event the property could not have been conveyed except by specific corporate action upon a vote of at least a majority of the directors, and that no such meeting was held and no such majority vote obtained.

As to the first contention, construing the charter of defendant, it appears that it has general power to buy and sell real estate as its regular business and the specific mention of the Junior Order Building and lot does not exempt it from such power or segregate it from such property acquired generally for such purpose. The defendant occupied no part of it. It was not used for a permanent office, home or other facility in carrying on the business in which it was engaged or in which it might engage, but was a part of its stock in trade. Hence G. S., 55-26.11, has no application to its contemplated sale.

G. S., 55-26.9, gives the power "to sell, transfer and convey any part of its corporate property in the course of its regular business." G. S., 55-26.10, empowers a corporation (applying to corporations generally) "to sell, transfer and convey any part of its corporate real or personal property when authorized so to do by its board of directors."

Whether there is intended a distinction between subsections 9 and 10 which would relieve a corporation trading in real estate as a regular business from the necessity of calling on the directorate for authority for each particular sale we need not inquire. Under the agency doctrine authority to make a valid contract of sale may be referable to or implied from other considerations to which, when present, it was not the purpose

of section 10 to apply an overall restriction. Williston on Contracts, Sec. 271.

But aside from this, plaintiff's right to go to the jury on the evidence presented would not be defeated, even considering that the authority to make a binding sales contract must depend, ultimately, on action by the board of directors, either by specific or general delegation of powers, however or whenever conferred.

It is assumed by appellee that the meeting of the stockholders and directors mentioned in the evidence, at which the plaintiff was informed that his offer had been accepted and at which certain details as to the rental of offices in the building were agreed upon, was the only meeting at which any action by the directors could have been taken. That is not a necessary inference. Prior to that meeting the plaintiff had been informed that his offer had been accepted and that statement was repeated to him in the meeting which he attended as a conferee.

But we do not think that the right of the plaintiff rests upon this narrow ground. Under the Agency Doctrine the apparent authority of the officers of the corporation with whom the plaintiff dealt may have been derived, and in trading corporations of this kind usually is derived, from sources other than formal action of the directors on each particular offer as made; and the supposed defect in plaintiff's evidence is not of such a nature as to relieve the defendant from establishing its defense. Williston on Contracts, Vol. 1, Sec. 271, pp. 786, 787.

The plaintiff dealt directly with responsible officers of the corporation. The offer and its acceptance by them was complete in every detail. But the evidence of plaintiff goes much further. Notwithstanding much of the evidence relating to the transaction was rejected on objection by defendant, enough remains which tends to show that a deed was properly executed by officers of the corporation, designated by statute, and by agreement was put in escrow at the State Planters Bank to be lifted by the plaintiff on payment of the balance of the purchase price, $500 having already been paid and accepted. He promptly appeared at the bank and paid in the money, but was informed the deed had been withdrawn. He was subsequently informed that defendant had "changed its mind."

If the instrument thus put in escrow was what the evidence tends to show that it was—a deed—it bore the seal of the corporation and raised the presumption that it was executed by authority. Fletcher, Cyc. Corporations, Vol. 2, sec. 486, *et seq.*

At this point it is not necessary for us to go into the question of authority, or power, to withdraw the deed from escrow without consent of the plaintiff. We say, however, that from the circumstances detailed in the evidence there is an inference of authority to make a binding contract not negatived by anything we find in plaintiff's evidence, con-

sidered in its most favorable light, and the evidence ought to have been submitted to the jury. The judgment of nonsuit is, therefore,
    Reversed.